**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **DISTRICT OF COLUMBIA,**<br>A Municipal Corporation<br>441 4th St. NW<br>Washington, DC 20001<br><br>    Plaintiff,<br><br>        v.<br><br>**ASHA PINKNEY GILLUS,**<br>Mother and next friend of C.G., a minor<br>8104 Eastern Avenue, NW<br>Washington, DC 20012<br><br>    Defendant. | Civ. No. _____ |

# COMPLAINT

(For declaratory and injunctive relief, reversal of administrative order)

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* (IDEA) and 28 U.S.C. § 1331. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

2. Plaintiff District of Columbia has been aggrieved by an administrative decision made under the IDEA. 20 U.S.C. § 1415 (i)(2)(A).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

## PARTIES

4. Plaintiff District of Columbia is a municipal corporation.

5. C.G. is a minor child who resides in the District of Columbia and has been identified as a child eligible to receive special education and related services under the IDEA.

6. Defendant Asha Pinkney Gillus is the mother and legal guardian of C.G.

**FACTUAL ALLEGATIONS**

7. C.G. is a child eligible to receive special education and related services under the IDEA with a disability classification of other health impairment.

8. C.G.'s disability classification is based on a diagnosis of Trisomy 21, or Down Syndrome, and delays in adaptive, cognitive, communication, and fine and gross motor development.

9. The District of Columbia Public Schools (DCPS) developed C.G.'s initial Individualized Education Program (IEP) on June 7, 2019.

10. C.G. was four years old when DCPS developed her initial IEP.

11. C.G.'s June 7, 2019 IEP provided for 10 hours per week of specialized instruction in a general education setting, four hours per month of speech-language services in an outside of general education setting, 120 minutes per month of occupational therapy outside of general education, and 120 minutes per month of physical therapy outside of general education.

12. The June 7, 2019 IEP noted that C.G.'s Least Restrictive Environment (LRE) was a general education classroom with some special education support on a weekly basis.

13. Through a lottery system, Defendant Gillus secured a seat for C.G. at Shepherd Elementary School (Shepherd), a DCPS school, for C.G.'s Pre-K 2019-20 school year.

14. At Shepherd, C.G. immediately began displaying behaviors such as rolling on the floor, walking around the classroom, running away from the student group or teachers, moving from one spot to another spot, invading peers' personal space, picking up items without permission throughout the classroom, touching peers, leaving the classroom without asking for

permission before leaving going into places in the school building other than those authorized, and verbalizing during instruction and making noises.

15. On September 4, 2019, C.G. entered a closet adjacent to the classroom that locks from within.

16. On September 6, 2019, DCPS developed an Individual Student Safety Plan for C.G.

17. The Safety Plan required Shepherd staff to (1) provide consistent positive reinforcement to C.G. for on-task behaviors, (2) remain in close proximity to C.G. in the classroom to discourage elopement, and (3) remind C.G. of predetermined options such as allowing her to have a structured break or opportunity to walk down the hallway and back while accompanied by a staff member.

18. As a result of C.G.'s behaviors, DCPS also completed a Functional Behavior Assessment.

19. DCPS also developed a Behavior Intervention Plan (BIP) for C.G.  The BIP provided that, in response to C.G. leaving a designated area without permission, she would be incentivized to not do so with tangible treats and activities of choice.  It further provided that, in response to noncompliance with assigned tasks, C.G. would receive positive verbal praise and encouragement, tangible treats, and activities of choice.

20. On September 13, 2019, C.G.'s IEP team at Shepherd reconvened.

21. The Shepherd IEP team modified C.G.'s special education services to 20 hours per week outside of general education.

22. The IEP's LRE section stated that "[C.G.'s] delays across developmental areas require a small student to teacher ratio with adapted and modified curriculum."

23. The IEP further stated that "C.G. requires redirection to task and constant assistance."

24. On September 30, 2019, DCPS proposed Thomas Elementary School (Thomas) to implement C.G.'s revised IEP.

25. Defendant Gillus objected to DCPS's proposal, in part because she contended that Thomas was an "underperforming school."

26. On October 30, 2019, DCPS offered an alternative school, Bancroft Elementary School (Bancroft), to implement C.G.'s revised IEP.

27. On November 8, 2019, Defendant Gillus filed a due process complaint against DCPS under the IDEA.

28. Defendant Gillus raised no issue about DCPS's implementation of C.G.'s IEP in her due process complaint.

29. On December 9, 2019, the parties participated in a prehearing conference with the assigned independent hearing officer, Terry Banks.

30. On December 9, 2019, the hearing officer issued a prehearing order, memorializing the following issues to be decided:

   a. Whether DCPS failed to provide C.G.'s with an appropriate IEP because it failed to consider adequately an evaluation performed by Early Stages in June 2019 that determined that she "could attend her neighborhood school" in a general education setting;

   b. Whether DCPS adequately implemented C.G.'s IEP, particularly by failing to provide appropriate levels of related services: occupational therapy, physical therapy, and speech therapy;

      c. Whether DCPS reassigned C.G. to a different school without the proper assessments being conducted; and

      d. Whether the IEP team increased C.G.'s hours of specialized instruction without cause.

31. Prior to the due process hearing, C.G. underwent an independent neuropsychological evaluation in December 2019.

32. On December 12, 2019, Defendant Gillus filed a motion for a continuance, in part to allow the hearing officer to consider the neuropsychological evaluation that was not yet completed. The hearing officer denied the motion on December 16, 2019.

33. On December 19, 2019, Defendant Gillus's educational advocate, Amy Mounce, observed C.G. in her general education classroom.

34. Mounce observed that C.G. would not follow directions, would not lie down when directed, would not listen to teachers, went to the bathroom without permission, and would lie down on peers' mats instead of her own mat.

35. A due process hearing convened on January 9 and 10, 2020.

36. As of the January 9 and 10, 2020 due process hearing, DCPS had not yet reviewed the independent neuropsychological evaluation of C.G.

37. Defendant Gillus sought as relief: "(1) a finding that placement in Bancroft is not appropriate, (2) an order directing DCPS to reconvene an IEP team meeting to consider an independent neuropsychological evaluation, and assistive technology evaluation and to update the IEP accordingly, (3) an order to direct DCPS to assign a dedicated aide to Student, and (4) an order for DCPS to implement Student's behavior plan."

38. Defendant Gillus presented the testimony of Mounce; Travis Robinson, an occupational therapist; and herself.

39. DCPS presented the testimony of Angela Karan Bonham, C.G.'s speech pathologist at Shepherd; Jasmine Menachery, C.G.'s occupational therapist at Shepherd; Ashley Pullam, a DCPS program specialist; Melani Lewis, C.G.'s general education teacher; and Dr. Angela Stephens, a special education teacher and Local Educational Agency representative at Shepherd.

40. DCPS's witnesses unanimously testified in support of placing C.G. into a more restrictive environment, *i.e.*, a special education classroom at Bancroft for 20 hours per week.

41. On February 10, 2020, the hearing issued a hearing officer determination.

42. On the first issue, the hearing officer found that DCPS did not deny C.G. a free appropriate public education (FAPE) by not adequately considering the evaluations of C.G. before developing the June 2019 IEP.

43. On the second issue, the hearing officer noted that "[t]here is no documentation in the record that DCPS failed to provide Student any related services prescribed in either the June 7, 2019 or the September 13, 2019 IEP," but found that DCPS denied C.G. a FAPE "by failing to provide 19 hours of specialized instruction."

44. On the third issue, the hearing officer found that DCPS denied C.G. a FAPE by not providing the "the necessary support to facilitate [her] placement in the least restrictive environment."

45. On the fourth issue, the hearing officer found that DCPS denied C.G. a FAPE "by amending [her] specialized instruction in a manner that would preclude a placement in the least restrictive environment."

46. As a remedy, the hearing officer ordered DCPS to "reconvene an IEP team to review all current evaluations of Student, develop a behavior intervention plan, and develop an updated annual IEP that maintains Student's specialized instruction in the general education environment."

47. The ordered remedy is unsupported by any reasoning or analysis.

## COUNT I
### (Abuse of Discretion)

48. Plaintiff hereby incorporates by reference the allegations in the above paragraphs 1-47 as if fully set forth herein.

49. "A court is obligated by the IDEA to ensure that [the] relief set forth in the administrative award was appropriate" and the court "may not simply rely on the Hearing Officer's exercise of discretion." *Turner v. District of Columbia*, 952 F. Supp. 2d 31, 36 (D.D.C. 2013).

50. "The IDEA requires public schools to . . . take steps to identify those students with disabilities and, armed with all reasonably available information and expertise, ensure that each IDEA-eligible student receives an education appropriate to her needs." *Z.B. v. District of Columbia*, 888 F.3d 515, 528 (D.C. Cir. 2018).

51. In developing each child's IEP, the IEP Team shall consider the results of the most recent evaluation of the child. 20 U.S.C. § 1414(d)(3)(A)(iii).

52. The IEP Team must also revise an IEP as appropriate to address the results of any reevaluation and information about the child provided to, or by, the parents. 20 U.S.C. § 1414(d)(4)(A)(ii)(II)-(III).

53. By ordering DCPS to "review all current evaluations of Student" while at the same time restricting C.G.'s IEP Team's ability to modify the contents of her IEP, the hearing

officer's determination does not allow DCPS to fully comply with its responsibilities under the IDEA.

54. By imposing specific obligations upon DCPS that are contrary to the IDEA and which place DCPS in the untenable position of having to choose between compliance with the law or compliance with the HOD, the hearing officer abused his discretion and his remedy should be vacated. *See District of Columbia v. Nelson*, 811 F. Supp. 2d 508 (D.D.C. 2011).

## RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court award the following relief:

1. Issue judgment for Plaintiff against Defendant;

2. Reverse the February 10, 2020 hearing officer's determinations identified above;

3. Order that DCPS's responsibilities under the IDEA for providing C.G. a free and appropriate public education in the future will not be limited by the HOD restrictions overruled herein;

4. Order any such other relief as the Court deems just and proper.

Date:  May 8, 2020

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/Steven N. Rubenstein*
STEVEN N. RUBENSTEIN [1013094]
Assistant Attorney General
Suite 630 South

8

         441 Fourth Street, NW
         Washington, D.C.  20001
         (202) 727-9624
         (202) 741-0592 (fax)
         Steven.rubenstein3@dc.gov

*Counsel for Plaintiff District of Columbia*